UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CALIFORNIA ATTORNEY
LENDING, LLC, *et al.*,

                Plaintiffs,

v.

LEGAL RECOVERY
ASSOCIATES, LLC,

                Defendant.
_____

1:23-MC-00020 LJV (MJR)

DECISION AND ORDER

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo. (Dkt. No. 2) Before the Court is California Attorney Lending, LLC, Megan Payne, and Steven Mingle's motion to quash nonparty subpoenas issued by Legal Recovery Associates, LLC, in connection with a lawsuit currently pending in the Southern District of New York, *Legal Recovery Associates LLC v. Brenes Law Group, P.C., et al.*, Case No. 22-CV-01778 (S.D.N.Y.). For the following reasons, the motion to quash the nonparty subpoenas (Dkt. No. 1) is denied.[1]

---

[1] "[T]he Second Circuit has ruled that motions to compel or quash subpoenas are properly classified as non-dispositive, even when the subpoena seeks information from a nonparty." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 352 (S.D.N.Y. 2018); *accord Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ("A motion to quash a subpoena in an action seeking relief other than production of the subpoenaed information is not normally a dispositive motion."). Further, even if resolution of the miscellaneous action on compelling or quashing the subpoena would be dispositive of that action and result in administratively closing that action, that resolution remains non-dispositive. *See Cadence Pharms., Inc. v. Multisorb Techs., Inc.*, 16-MC-22, 2016 U.S. Dist. LEXIS 107769 (W.D.N.Y. Aug. 15, 2016); *accord Agincourt Gaming, LLC v. Zynga*, 2:14-CV-0708, 2014 U.S. Dist. LEXIS 114348, at *4-5 (D. Nev. Aug. 15, 2014)).

## THE UNDERLYING LAWSUIT

California Attorney Lending, LLC ("CAL") and Legal Recovery Associates, LLC ("LRA") are litigation finance companies that provide financing to plaintiffs' law firms involved in mass tort and personal injury lawsuits. (Dkt. No. 1-1, pg. 8; Dkt. No. 5, pgs. 1-3) The Brenes Law Group, P.C. ("BLG") is a law firm and Troy Brenes ("Brenes") is BLG's principal attorney. (Dkt. No. 1-3) LRA has sued BLG and Brenes (hereinafter the "BLG defendants") in the Southern District of New York over two promissory notes, pursuant to which the BLG defendants agreed to pay LRA the principal amounts of $1,100,000 and $500,000 as well as interest, *Legal Recovery Associates LLC v. Brenes Law Group, P.C., et al.*, Case No. 22-CV-01778 (S.D.N.Y.) ("the SDNY Lawsuit"). (*Id.*) It is alleged that, as collateral for the promissory notes, the BLG defendants provided LRA with a security interest in certain proceeds and fees that BLG was to receive in connection with its work on products liability cases. (*Id.*) The BLG defendants allegedly represented to LRA that this collateral would be free and clear of any other liens, security interests, or encumbrances. (*Id.*)

LRA alleges, in the SDNY Lawsuit, that the BLG defendants later entered into a secondary loan agreement pursuant to which they granted a third-party lender a general security interest in their assets, including the collateral promised to LRA as security for the promissory notes. (*Id.*) It is undisputed that the third-party lender referred to in the complaint is CAL. (Dkt. No. 1-1, pg. 2) LRA alleges that by granting CAL an interest in the collateral, the BLG defendants triggered a default of the promissory notes, thus providing LRA a right of acceleration. (Dkt. No. 1-3) LRA then issued a notice of default and acceleration, demanding payment from the BLG defendants for all amounts due under

the promissory notes. (*Id.*) LRA alleges that the BLG defendants have failed to pay the principal and interest due under the notes. (*Id.*) LRA asserts claims for breach of contract and breach of an associated guaranty, based on default under the promissory notes as well as the BLG defendants' impairment of LRA's security interest in the collateral by granting an interest in that same collateral to CAL. (*Id.*)

In their first amended answer to the complaint in the SDNY Lawsuit, the BLG defendants asserted counterclaims alleging, *inter alia*, that BLG attempted to repay the promissory notes in full but that LRA breached its duty of good faith and fair dealing by intentionally preventing BLG from repaying the amounts owed. (Dkt. No. 1-4) The BLG defendants allege that they negotiated a new line of credit from a third-party lender that included amounts specifically earmarked to pay all debts to LRA. (*Id.*) The third-party lender requested that LRA sign a payoff letter indicating that the promissory notes owed by BLG were paid in full once the funds were transferred. (Dkt. No. 1-4) It is undisputed that the third-party lender referred to in the counterclaims is CAL. (Dkt. No. 5, pg. 2)

The BLG defendants allege that LRA's bad faith consisted of, *inter alia*, refusing to sign the payoff letter requested by CAL unless certain terms were inserted into the letter that had no relevance to the promissory notes, but instead operated to force BLG to make improper concessions regarding its attorney association agreement with Lawrence Litigation Group, LLP, a law firm affiliated with LRA.[2] (Dkt. No. 1-4, Dkt. No. 5, pg. 3) The BLG defendants specifically claim that LRA demanded that the payoff letter include language stating that BLG's attorney association relationship with Lawrence, in regard to

---

[2] The BLG defendants alleges that Gary Podell is believed to be an owner and investor in LRA and is also a partner in Lawrence Litigation Group. (Dkt. No. 1-4) The BLG defendants also allege that "LRA formed Lawrence as a sham law firm for the sole purpose of nonlawyers marketing for and sharing attorneys fees in products liability cases." (*Id.*)

3

certain products liability cases, was "valid, enforceable, [and] in good standing." (Dkt. No. 1-4) It is alleged that, as a result of LRA's demands with respect to language in the payoff letter, CAL agreed to dispense with the requirement of a payoff letter. (*Id.*) The BLG defendants allege that LRA then continued its bad faith by refusing to disclose either the amount owed or the relevant account information, effectively preventing BLG from paying LRA for the debts incurred in the promissory notes. (*Id.*) BLG's claim for damages with respect to its counterclaims in the SDNY Lawsuit include "the amount of the interest accrued on funds that were put aside…by [the BGL defendants] to account for the estimated amount of the debt owed to LRA." (*Id.*)

## THE SUBPOENAS

On May 9, 2023, LRA issued a subpoena *duces tecum* to CAL seeking the following information in connection with the SDNY Lawsuit: (1) agreements and related transaction documents (*i.e.*, the entire transaction binder) concerning any extension of credit by CAL to BLG; (2) documents and communications concerning BLG's credit relationship with LRA; (3) documents and communications concerning planned, contemplated, or attempted payoff of BLG's credit obligation to LRA; (4) documents and communications concerning BLG's relationship with Lawrence Litigation Group, LLP as it pertained to its interest, if any, in BLG's cases; (5) loan statements relating to any credit arrangement between CAL and BLG; (6) collateral reports relating to collateral securing any loan extended to BLG; (7) reports received from BLG concerning the existence, status, and any proceeds from BLG's cases; (8) documents and communications relating to calculating the payoff amount on BLG's obligation to LRA; (9) documents and communications relating to any escrow agreements, reserves, indemnities, or other

4

protections established by CAL concerning BLG's obligations to LRA; and (10) communications regarding the lawsuit between LRA and the BLG defendants. (Dkt. No. 1-5) LRA also served subpoenas for the testimony of Megan Payne and Steve Mingle, employees of CAL who apparently serviced CAL's loan agreement with BLG. (Dkt. Nos. 1-1, pg. 2; 1-6; 1-7)

On June 5, 2023, CAL, Payne, and Mingle (collectively referred to as "plaintiffs'") filed a motion before the Honorable Barabra C. Moses, the United States Magistrate Judge presiding over the SDNY Lawsuit, objecting to the subpoenas issued by LRA and seeking permission to file a motion to quash pursuant to Rule 45 of the Federal Rules of Civil Procedure. (Dkt. Nos. 1-8) Judge Moses denied the request without prejudice to plaintiffs' ability to file the motion in the Western District of New York.[3] (Dkt. No. 1-9) The instant motion to quash the subpoenas followed. (Dkt. No. 1)

## DISCUSSION

A court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to an undue burden." *See* Fed. R. Civ. P 45(d)(3)(A)(iii-iv). Whether a subpoena imposes an undue burden depends upon considerations of "relevance, the need of the party for the documents, the breath of the document requests, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Rebmann v. Astec, Inc.*, 21-CV-879, 2022 U.S. Dist. LEXIS 115100 (W.D.N.Y. June 29, 2022);

---

[3] According to the subpoenas, CAL has an office in the Western District of New York and both Mingle and Payne appear to work in this District. (Dkt. Nos. 1-5, 1-6, 1-7) As noted by Judge Moses, "the power to quash or modify a subpoena belongs to the court for the district where compliance is required." *In re Smerling Litig.*, 21 Civ. 2552, 2022 WL 684148, at *2 (S.D.N.Y. Mar. 8, 2022).

*accord Libaire v. Kaplan*, 760 F. Supp. 2d 288 (E.D.N.Y. 2011). Specifically, the court should "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Ebbert v. Nassau County*, 05-CV-5445, 2007 U.S. Dist. LEXIS 15159 (E.D.N.Y. Mar 2, 2007). "It is well established that the burden of persuasion in a motion to quash a subpoena is borne by the movant" and the movant "bears a heavy burden of proof." *Kirschner v. Klemons*, 99 Civ. 4828, 2005 U.S. Dist. LEXIS 9803 (S.D.N.Y. May 19, 2005) (internal citations and quotations omitted).

Plaintiffs argue that the subpoenas should be quashed because (1) the documents sought are not relevant to the SDNY Lawsuit; (2) the requests are unduly burdensome and overbroad; (3) compliance would result in disclosure of CAL's confidential and proprietary information to a competitor; and (4) LRA is able to obtain the same information and documents from a party to the SDNY Lawsuit, namely the BLG defendants. The Court has considered these arguments and finds, for the reasons explained further below, that plaintiffs have not met their burden in demonstrating that the subpoenas should be quashed.

*Relevancy*

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998); *see also Warnke v. CVS Corp.*, 265 F.R.D.64, 66 (E.D.N.Y. 2010). Rule 26 provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *See* Fed. R. Civ. P. 26(b)(1). Relevance to the subject matter "has been construed broadly to encompass any matter

6

that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) (citations omitted). Furthermore, relevant information "need not be admissible in evidence to be discoverable." *See* Fed. R. Civ. P. 26(b)(1).

Here, the documents requested by LRA from CAL pursuant to the subpoenas are clearly relevant to the SDNY Lawsuit. Specifically, the requests are relevant to LRA's claims that the BLG defendants triggered an acceleration and default of the promissory notes by entering into a loan agreement with CAL pursuant to which BLG granted CAL a security interest in the same collateral BLG had already promised to LRA. Plaintiffs seem to concede that CAL's loan agreement with BLG is pertinent to the claims in the SDNY Lawsuit. However, plaintiffs maintain that LRA's remaining document requests are not relevant. The Court disagrees. Other documents requested in the subpoena include loan statements, collateral reports, and communications regarding the credit relationship between CAL and BLG. This information is directly related to the secondary loan agreement between the BLG defendants and CAL, as well as to the security interest granted to CAL in certain BLG collateral. These events are alleged to have triggered the breach of contract between the BLG defendants and LRA, which is the crux of the SDNY Lawsuit.

The documents sought are also directly relevant to the BLG defendants' counterclaims that LRA prevented BLG from repaying amounts owed under the promissory notes with money loaned to BLG, by CAL, for this express purpose. For example, LRA seeks information in CAL's possession regarding the payoff of BLG's credit obligations to LRA, including documents and communications related to escrow

7

arrangements, reserves, indemnities, and other protections established by CAL with regard to BLG's obligation to LRA.  Further, the documents sought are pertinent to (1) LRA's claims that the BLG defendants made payments to CAL from proceeds derived from collateral promised to LRA and (2) BLG's counterclaims for damages in the form of interest on money set aside to pay LRA in accordance with the secondary loan agreement with CAL.

The subpoenas for testimony are relevant for these same reasons. It appears from the record that Mingle and Payne, both employees of CAL, were involved in servicing the secondary loan agreement between CAL and BLG. It also appears that one or both of these employees was involved in the negotiations of the payoff and payoff letter with LRA. Thus, these individuals are likely to have information pertinent to the BLG defendants' counterclaims that LRA breached its duty of good faith and fair dealing by purposefully preventing BLG from paying off the promissory notes with money loaned by CAL. Indeed, Mingle was listed by the BLG defendants as a witness in their initial disclosures as well as in their discovery responses, and neither Payne nor Mingle have submitted affidavits denying personal knowledge of information relevant to the SDNY Lawsuit. *See Pisani v. Westchester Cnty. Health Care Corp.*, 05 Civ. 713, 2007 WL 107747, at *2 (S.D.N.Y. Jan. 16, 2007) (denying motion to quash where witness failed to submit an "affidavit as to his involvement or non-involvement").

For these reasons, the Court finds that the subpoenas issued to plaintiffs are relevant to the claims and counterclaims asserted in the SDNY Lawsuit.

*Breath and Burden*

CAL contends that the subpoenas are overly broad and unduly burdensome because they essentially seek all documents in any way related to CAL's lending relationship with BLG from September 1, 2019 to the present. During oral argument, it was established that the only loan agreement between the BLG defendants and CAL is the secondary loan agreement which is central to the claims in SDNY Lawsuit. Thus, LRA's requests appear to be limited to documents related to one loan and the related collateral, as well as documents and information regarding CAL's knowledge of, and involvement in, the BLG defendants' attempted payoff of its promissory note obligations to LRA. Indeed, CAL has failed to demonstrate how production of this limited set of documents would cause it to suffer an undue burden.

"Under well-settled law, the party resisting production bears the responsibility of establishing undue burden." *Cris v. Vareri*, 3:10-CV-1926, 2011 U.S. Dist. LEXIS 108362 (D. Conn. Sept. 22, 2011). Therefore, where a party seeking to quash a subpoena has made no showing as to the nature and extent of the actual burden it would face in responding to the requests, the objection of undue burden is typically overruled. *Id. See also Jackson v. Edwards*, 99 Civ. 0982, 2000 U.S. Dist. LEXIS 8549 (S.D.N.Y. June 16, 2000) (conclusory assertion of burdensomeness is entitled to no weight whatsoever); *Kenneth v. Nationwide Mut. Fire Ins. Co.*, 03-CV-521, 2007 WL 3533887, at *17 (W.D.N.Y. Nov. 13, 2007) (plaintiff cannot rely on generalized objections that defendant's requests were "burdensome, oppressive, or overly broad"); *Automated Mgmt. Sys. V. Rappaport Hertz Cherson Rosenthal, P.C.*, 16-CV-4762, 2021 U.S. Dist. LEXIS 5759 (S.D.N.Y. Jan. 12, 2021) (where defendant did not submit evidence, by affidavit or

otherwise, showing that compliance with the subpoena was burdensome, defendants failed to show that the subpoena was improper or that complying with it would be unduly burdensome).

It appears to the Court that CAL is a sophisticated litigation finance company and that plaintiffs are represented by competent counsel. Presumably, CAL has had experience with searching for and producing electronically stored information in the course of its business and operations. Yet, CAL fails to set forth any specific detail as to the burden imposed by complying with the subpoenas. CAL has not identified the number of documents that may be involved in the production; the anticipated time it would take to search for and locate the relevant documents; or the cost that may be associated with the search and production. Moreover, there is no indication in the record that CAL ever contacted LRA in an attempt to limit or negotiate the scope of the information sought by the subpoenas. As to Mingle and Payne, there has been no assertion that they lack information either directly pertinent to the SDNY Lawsuit or that could lead to relevant evidence, and no basis has been put forth as to how the taking of their testimony would constitute an undue burden.[4]

"Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative

---

[4] "It is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Am. High-Income Tr. v. AlliedSignal Inc.*, 02 Civ. 2506, 2006 WL 3545432, at *2 (S.D.N.Y. Dec. 8, 2006); quoting *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997). See also *Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir. 1972) (noting that "an order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable"); *Speadmark, Inc. v. Federated Department Stores*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997) ("An order barring a litigant from taking a deposition is most extraordinary relief.").

10

consequences of insisting on compliance." *Kirschner*, 2005 U.S. Dist. LEXIS 9803. Here, plaintiffs have made an insufficient showing as to the nature and extent of the actual burden they would face in responding to the subpoenas. Thus, plaintiffs' objections on the basis of overbreath and undue burden are denied.

### Confidentiality

Plaintiffs further contend that the subpoenas should be quashed because they seek confidential and proprietary information. To be sure, "where a subpoena may have little or no relevance to the claims and defenses in a particular action, while having the potential of disclosing confidential or proprietary information that could create a contemporary and possibly an uncompromising edge over others, a court should consider quashing the subpoena." *Banner Indus. of N.E. v. Wicks*, 11-CV-537, 2013 WL 5722812, at *8 (N.D.N.Y. Oct. 21, 2013) (Courts are "keenly sensitive" to the burden imposed upon a non-party witness who may face "irreparable harm and prejudice for exposing its proprietary information[.]").

The Court is not confronted with this scenario here. First, for the reasons stated previously, the documents and information sought by the subpoenas are highly relevant to the claims, defenses, and counterclaims asserted in the SDNY Lawsuit.

Further, the Court is not persuaded that compliance with the subpoenas would result in the disclosure of confidential and proprietary information that would damage CAL's competitive position in the marketplace or otherwise cause CAL to suffer irreparable harm. In raising concerns over confidentiality, plaintiffs point to LRA's requests for documents and testimony regarding CAL's collateral reports, internal escrow arrangements, reserves, and credit relationship with BLG. However, all of this information

is related to CAL's loan agreement with BLG and the collateral associated with that loan. Indeed, much of this information has apparently been requested by LRA from the BLG defendants through party discovery in the SDNY Lawsuit. In fact, Judge Moses recently ordered the BLG defendants to disclose its unredacted loan agreement with CAL to LRA. *See Legal Recovery Associates LLC v. Brenes Law Group, P.C., et al.*, 22-CV-01778, Dkt. No. 79 (S.D.N.Y. Oct. 13, 2023). Thus, it seems that much of the information that plaintiffs seek to protect, namely the specific terms of CAL's loan agreement with BLG, either has been or will likely be disclosed in the course of party discovery.

Moreover, the Court is skeptical as to how an agreement related to a single loan and its associated collateral reports by a litigation financing company constitutes the type of proprietary information that would cause irreparable harm to CAL. To that end, CAL has offered no specific explanation as to why this information is considered confidential or proprietary. Likewise, CAL has not described how its disclosure would either impact CAL's position in the marketplace or provide a competitive advantage to LRA. Finally, parties often enter into protective orders for precisely the reasons raised by CAL, and LRA has indicated its willingness to enter into such an order here. (Dkt. No. 5, pg. 13)

Thus, the Court finds that the subpoenas should not be quashed based upon the purported confidential or proprietary nature of the information sought.

### *Availability from the BLG Defendants*

Plaintiffs argue that the subpoenas should be quashed because the documents and information sought therein can be obtained from the BLG defendants in the SDNY Lawsuit. "[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather subpoenaing them from a non-party witness."

*See Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67 (S.D.N.Y. July 27, 2020); *accord* 8B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2204 (3d ed. 2002). Likewise, "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, 03 Civ. 1685, 2007 WL 1589437, *14 (S.D.N.Y. June 4, 2007). The Court recognizes that the potential availability of the subpoenaed documents through party discovery in the SDNY Lawsuit is plaintiffs' most compelling argument in favor of quashing the subpoenas. However, in light of the specific circumstances presented here, the Court declines to grant the request.

First, not all of the documents and information requested in the subpoenas are necessarily available from the BLG defendants. For example, CAL may be in possession of its own internal documents or notes regarding the loan agreement with BLG, the collateral promised to CAL by BLG, and/or the payoff negotiations related to BLG's obligation to LRA. These internal documents and communications, which are not likely to be in the possession of the BLG defendants, are relevant to the claims and defenses asserted in the SDNY lawsuit.

Further, it does not appear to the Court that LRA is using the instant subpoenas as an end-run around party discovery. Counsel for CAL represents that they have spoken with counsel for the BLG defendants and that there is significant overlap between the information sought in the subpoenas and the information requested from the BLG defendants in the SDNY Lawsuit. Thus, LRA has apparently made efforts to obtain much of this information through party discovery. However, as represented during oral argument, LRA's time to conduct party discovery and to issue nonparty subpoenas is

proceeding simultaneously. It is conceivable that LRA may be unsuccessful in obtaining some or all of the requested information from the BLG defendants, either because the BLG defendants have not preserved all of the relevant documents or communications or because they are unwilling to produce it. Thus, it seems that LRA has issued the instant subpoenas to ensure that it will not ultimately be precluded from obtaining available and relevant information from a nonparty, that it may not be able to recover from defendants to the SDNY Lawsuit.

As noted above, Judge Moses recently ordered the BLG defendants to produce their unredacted loan agreement with CAL. On October 18, 2023, LRA filed a letter motion in the SDNY Lawsuit seeking a discovery conference before Judge Moses, in anticipation of a planned motion to compel, based on the BLG defendants' failure to produce, *inter alia*, loan statements in connection with its lending agreement with CAL. *See Legal Recovery Associates LLC v. Brenes Law Group, P.C., et al.*, 22-CV-01778, Dkt. No. 80 (S.D.N.Y. Oct. 18, 2023). In addition, counsel for LRA represented to this Court that during another discovery conference before Judge Moses, LRA reported that the BLG defendants had not disclosed certain relevant communications. (Dkt. No. 12) In response, Brenes represented that he routinely deletes emails in order to save space on his server. (*Id.*) Thus, it is far from clear to this Court that all of the information requested in the

subpoenas is easily obtainable through party discovery.[5]

In sum, the Court finds that the documents and information sought from plaintiffs are relevant, that the subpoenas do not impose an undue burden, and that plaintiffs have not demonstrated a sufficient risk as to the disclosure of confidential or proprietary information. Furthermore, the Court finds that LRA has demonstrated a substantial need for the subpoenaed documents in the SDNY Lawsuit, and it is unclear as to whether LRA will be successful in obtaining all of these documents and communications through party discovery. Weighing these factors together, the Court finds no basis to quash the subpoena requests.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to quash the subpoenas is denied. (Dkt. No. 1)

---

[5] For these reasons, the Court finds the instant matter distinguishable from cases where (1) the information and documents subpoenaed from a nonparty were easily obtainable during party discovery; (2) the issuing party was clearly using the Rule 45 subpoenas to circumvent the regular discovery process; or (3) the documents requested were of limited relevance. *See e.g., Burns*, 2007 U.S. Dist. LEXIS 40037 (granting motion to quash subpoena *duces tecum* directed at employee of defendant where it appeared that subpoena had been "served by the plaintiffs in an effort to circumvent the discovery process"); *Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, 10-CV-35, 2013 U.S. Dist. LEXIS 148340 (W.D.N.Y. Oct. 15, 2013) (motion to quash non-party subpoena granted where the only relevant documents requested "could easily have been requested [by plaintiff] during the normal course of discover"); *Corbett v. eHome Credit Corp.*, 10-CV-26, 2010 U.S. Dist. LEXIS 77712 (E.D.N.Y. Aug. 2, 2010) ("Since the information sought by subpoena is," *inter alia*, "easily obtainable from another source, and, at best, tangential to the claims at issue in this case, the burden imposed by the third-party subpoenas outweighs any likely benefit to [plaintiff] in prosecuting the [] action.").

SO ORDERED.

Dated: October 25, 2023
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge